***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant-Employer was insured by Legion Insurance Company at the time of Plaintiff's alleged accident.
3. An Employer-Employee relationship existed between the employee and the employer on October 18, 2001, the date Plaintiff alleges he was injured.
4. Plaintiff's average weekly wage rate was $400.00 per week on or about October 18, 2001, which yields a compensation rate of $266.67 per week.
5. The issues to be determined from this hearing are as follows:
 a) Whether Plaintiff sustained an injury by accident while in the course and scope of his employment with Defendant-Employer?
 b) If so, what, if any, benefits is Plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
6. The following medical records and documents were stipulated into evidence as Stipulated Exhibit #2:
MEDICAL RECORDS
1. U.S. Healthworks (10/19/01)
 2. Piedmont Healthcare System (10/19/01 through 10/25/01)
 3. Springs Memorial Hospital (10/26/01 through 10/28/01)
 4. Carolina Neurosurgery Spine Associates(11/09/01 through 05/06/02)
 I.C. FORMS
5. Form 18 (pro se) (01/01/02)
6. Form 18 (counsel) (03/20/02)
7. Amended Form 18 (counsel) (09/06/02)
8. Form 19
9. Form 33 (04/16/02)
10. Form 33 R (06/12/02)
11. Form 61 (03/26/02)
12. Form 61 (07/01/02)
STATEMENTS
13. Statement of Brian Hilton (10/19/01)
14. Statement of Brian Hilton (10/24/01)
15. Statement of James Lowery (10/22/01)
 ***********
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a fifty-four-year-old male with a tenth grade education; he had been married for twenty-six years, and had one adult child. Plaintiff's job duties with Defendant-Employer included spraying pesticide, trenching outside of buildings, drilling holes in concrete and inspecting buildings, including basements and crawl spaces. Prior to the date of Plaintiff's injury on October 18, 2001, Plaintiff had worked as a termite exterminator, police officer, trash compactor operator and had served five years in the U.S. Marine Corps. Plaintiff had substantially the same job duties when he was employed with Sears as an exterminator during 2000.
2. Prior to October 18, 2001, Plaintiff had worked for the Defendant-Employer since November 2000, without missing time from work due to neck or back pain, and had performed his regular duties with Defendant-Employer without difficulty.
3. Plaintiff had experienced neck pain while living in Maryland approximately three to four years prior to his 2001 work injury. Plaintiff received non-surgical medical care for that condition, and it substantially resolved.
4. On October 18, 2001, Plaintiff was at a residence performing a termite inspection. He was crawling underneath a wooden deck to inspect the foundation of the house for signs of termite activity. The crawl-space was unusually low, approximately one and one-half to two feet in height. Scrap wood was stored against the foundation and interfered with Plaintiff's inspection. The wooden deck had a trap door that allowed access to the top of the deck.
5. As Plaintiff was in the unusually low crawl-space under the deck, he twisted at an awkward angle as he sought to move the scrap wood away from the foundation and through the trap door. As Plaintiff twisted his body and attempted to move a piece of wood, he felt a sharp burning pain down his right arm.
6. After Plaintiff extracted himself from the crawl-space, he finished trenching the house and then drank a cold soda provided by the homeowner while he sat and rested. Plaintiff felt weak and began having trouble walking. He fell as he attempted to avoid an acorn jokingly thrown at him by his helper Brian Hilton.
7. Plaintiff called his company owner, Rick Chapman, from the job site and reported his injury. Mr. Chapman advised him to seek medical attention. Plaintiff went home and was helped into the house by his wife. Plaintiff rested at home before seeking medical care on October 19, 2001, during the early morning hours.
8. Mr. Hilton confirmed in written statements signed October 19, 2001 and October 24, 2001, that Plaintiff's arm went numb while he was under the deck, one of Plaintiff's legs was shaky and he fell to the ground shortly after he crawled out from under the deck.
9. Plaintiff's wife, Rebecca Justis, testified that Plaintiff called her from his truck on October 18, 2001, and stated he was hurt and had decided to come home. When Plaintiff arrived home, she helped him from the truck into the house. She further stated she had never seen him in such poor condition, and that he had previously worked for Sears as an exterminator and for Defendant-Employer without any physical difficulty before October 18, 2001. Plaintiff also testified that he performed his regular job duties with Defendant-Employer without difficulty until his injury under the crawl-space on October 18, 2001.
10. The Full Commission finds the testimony of Plaintiff and Plaintiff's wife to be credible.
11. Plaintiff was initially seen at US Healthworks on October 19, 2001, complaining of numbness in his right hand. The medical notes state that Plaintiff "fell today — states legs gave away." US Healthworks referred Plaintiff to Dr. Mark A. Porter of Metrolina Neurology on the morning of October 19, 2001, on an urgent, work-in basis. Dr. Porter's notes and deposition testimony reflect that it was his understanding that Plaintiff's arm and leg symptoms had commenced on approximately October 15, 2001. Dr. Porter testified, however, that when he sees a patient on an urgent basis, his intake might not be as thorough as it would be otherwise. Dr. Porter stated his intake form does not have a space for a patient to indicate whether a condition is work related, and he does not know who completed Plaintiff's intake form. Dr. Porter opined that Plaintiff could have performed his regular job duties "with difficulty" if he had attempted his work in the condition he saw him on October 19, 2001.
12. Immediately after seeking treatment with Dr. Porter, Plaintiff was examined by neurosurgeon Michael Cowan at Piedmont Healthcare System Hospital. Piedmont Healthcare System Hospital's admission record of October 19, 2001, reflects the following patient history: "The patient is a pest control person and states that he had some intermittent back and neck pains in the past; however, on this occasion he was crawling under the house and in the course of reaching out while crawling under the house, he felt a sharp burning stabbing sensation down the back of his right arm." Dr. Cowan diagnosed Plaintiff with an acute C4-5 disc herniation, and he performed an anterior cervical discectomy and fusion of the C4-5 disc space with plate and screw application.
13. Dr. Porter testified that he does not think the history taken by Dr. Cowan is substantially different from the history Dr. Porter recorded. Dr. Porter saw some additions that were not in his notes; however, he did not think the history taken by Dr. Cowan was inconsistent with the history he recorded.
14. In support of their argument that Plaintiff's injury was not work related, Defendants allege that Plaintiff initially failed to inform his medical providers that his injury was work related. This argument is specifically contradicted by the Piedmont Healthcare System Hospital admission note of October 19, 2001.
15. Moreover, Dr. Cowan's office notes reflect Plaintiff was injured at work. Specifically, on December 10, 2001, Dr. Cowan wrote that "[Plaintiff] was injured on the job, as documented in Mike Bergin's original HP." On February 4, 2002, Dr. Cowan wrote, "He has had difficulty with Workers' Comp and has retained a lawyer. As documented in notes since his admission, he was injured while working."
16. In addition, the report of Dr. Allan Ryder-Cook prepared on October 21, 2002, recites a history that is not inconsistent with Plaintiff's testimony concerning how his injury occurred. Dr. Ryder-Cook diagnosed Plaintiff with cervical myelopathy with residual spastic quadriparesis, and stated, "This man is obviously disabled for physical activities. He might possibly be retrained for other sedentary type employment, but he is limited much in terms of how long he can stand, in moving about, lifting, carrying, and handling objects."
17. Dr. Porter's report of the history of Plaintiff's injury is given less weight than the medical notes of Dr. Cowan and Dr. Ryder-Cook. Dr. Porter admitted that he took his information on an urgent basis because of Plaintiff's very poor physical condition following his injury and that discrepancies might occur in medical records. Furthermore, the history taken by Dr. Porter is inconsistent with the credible testimony of Plaintiff and his wife.
18. The Full Commission give little weight to any inference or suggestion in Dr. Porter's notes and deposition testimony or any other notes of record that Plaintiff had right arm pain and gait difficulty several days prior to the October 18, 2001 injury. Based on the greater weight of the evidence, the Full Commission finds that Plaintiff did not have symptoms of right arm pain and numbness or leg weakness during the period prior to his work injury of October 18, 2001.
19. The Full Commission gives little weight to Dr. Porter's opinion that Plaintiff could perform his job as an exterminator when he saw Plaintiff on October 19, 2001. The greater weight of the evidence establishes that Plaintiff could no longer perform his job as an exterminator as of October 19, 2001.
20. The Full Commission finds that Plaintiff sustained an injury by accident or specific traumatic incident on October 18, 2001, arising out of and in the course of his employment as a result of attempting to move scrap wood while under a low clearance crawl-space. Having to remove scrap wood out of his pathway by twisting at an awkward angle to raise the wood through a trap door while trying to navigate through an usually low clearance crawl-space constituted an interruption of Plaintiff's normal work routine and the introduction of an unusual condition likely to result in an unexpected consequence. Plaintiff's injury either caused disc herniation or aggravated a pre-existing disc condition at C4-5, necessitating surgical repair of the herniation.
21. The Full Commission gives great weight to Dr. Cowan's medical report of May 26, 2002, and finds that Plaintiff cannot work independently at his previous occupation and has sustained some permanent impairment. Dr. Cowan has estimated that Plaintiff has a sixty-nine percent permanent partial impairment rating due to his cervical myelopathy with residual myelopathy. Dr. Cowan's estimate, however, is given little weight, as there is insufficient evidence from which to determine the basis for such a high rating and this issue does not need to be further addressed at this time.
22. Plaintiff's wife testified that as a result of his work injury, Plaintiff cannot lift, crawl, do heavy cleaning, and he rarely drives. He could do all of those things without difficulty before October 18, 2001.
23. Defendant-Employer has offered no work to Plaintiff since his injury of October 18, 2001, and he has not worked in any capacity as a result of his injury.
24. Due to his injury, Plaintiff has been incapable of working in any employment from October 19, 2001, and continuing, and is entitled to temporary total disability compensation from October 19, 2001 through the date of hearing before the Deputy Commissioner and continuing until further order of the Commission.
25. Plaintiff's average weekly wage at the time of his injury by accident was $400.00 per week, yielding a compensation rate of $266.67 per week
26. The treatment provided to Plaintiff was reasonably required to effect a cure, provide relief or lessen his disability resulting from his October 18, 2001 work-related injury.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained injury by accident or specific traumatic incident arising out of and in the course of his employment with Defendant-Employer on October 18, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wage at the time of his injury was $400.00 per week, yielding a compensation rate of $266.67 per week. N.C. Gen. Stat. § 97-2(5).
3. Plaintiff is entitled to temporary total disability benefits from October 19, 2001 through the date of hearing before the Deputy Commissioner and continuing until further order of the Commission. N.C. Gen. Stat. §§ 97-2(9); 97-29.
4. Defendants are obligated to pay for all of Plaintiff's reasonably required medical treatment resulting from his back injury of October 18, 2001, including past and future medical treatment, for so long as such treatment is reasonably required to effect a cure, provide relief or lessen his disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereinafter approved, Defendants shall pay compensation to Plaintiff for temporary total disability at the rate of $266.67 per week from October 19, 2001, through the date of hearing before the Deputy Commissioner and continuing thereafter until further order of the Commission. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by Plaintiff for reasonably necessary treatment related to his back injury of October 18, 2001 when bills for the same have been submitted and approved through procedures adopted by the Commission, for so long as such treatment tends to effect a cure, give relief or lessen Plaintiff's disability.
3. An attorney fee of twenty-five percent of the compensation awarded Plaintiff is approved for Plaintiff's attorney and shall be paid as follows: twenty-five percent of the accrued compensation due Plaintiff shall be deducted and paid directly to Plaintiff's attorney; thereafter Plaintiff's attorney shall receive every fourth check from the compensation due Plaintiff.
4. Defendants shall pay the costs of this action.
This the __ day of November 2005.
 S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/ ______________________ PAMELA T. YOUNG COMMISSIONER
 S/ ______________________ BUCK LATTIMORE CHAIRMAN